**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| CHRISTINE PATTERSON,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 4:12-1021-DCN-TER<br><br><br><br>**ORDER** |

This matter is before the court on the magistrate judge's Report and Recommendation (R&R) that the court reverse the Commissioner of Social Security's decision denying claimant Christine Patterson's application for disability insurance benefits (DIB) and supplemental security income (SSI) and remand the case to the Commissioner for further administrative action. The Commissioner has filed objections to the R&R. For the reasons set forth below, the court remands to the magistrate judge for further proceedings.

## I. BACKGROUND

### A. Procedural History

Patterson filed an application for DIB and SSI on March 24, 2010, alleging that she became unable to work on May 11, 2007. She requested a hearing before an administrative law judge (ALJ) after the Social Security Administration denied her application initially and on reconsideration. A hearing was held on November 4, 2011, and, in a decision issued on December 15, 2011, the ALJ determined that Patterson was not disabled. The ALJ's finding became the final decision of the Commissioner when the

Appeals Council denied further review on February 15, 2012. Patterson filed this action for judicial review on April 14, 2012. On June 26, 2013, the magistrate judge issued an R&R, recommending the Commissioner's decision be reversed and the case be remanded to the Commissioner for further administrative action. R&R 10-11. The Commissioner filed objections to the R&R on July 15, 2013.

**B. Patterson's Medical History**

Plaintiff Christine Patterson was born December 15, 1969. Tr. 38. She has past relevant work experience as a cashier, inspector, mold operator, price marker, and sewing machine operator. Tr. 7-8. Plaintiff alleges disability since May 11, 2007, after an accident at work on April 7, 2007, wherein she injured her right leg. R&R 2.

Following her injury, Patterson sought treatment at Moore Orthopaedic Clinic from April 10, 2007 to March 20, 2008, for a total of approximately twelve visits. Tr. 300-13. Dr. Silas Wendell Holmes performed surgery on Patterson's ACL on May 11, 2007, and continued to monitor her progress following the surgery. Tr. 302-13. Patterson underwent a subsequent manipulation with lysis of adhesions on November 16, 2007. Tr. 406. Throughout her visits at the clinic, Patterson complained of pain and trouble moving her knee. Id. On March 3, 2008, the clinic performed a functional capacity evaluation and concluded that "the physical demand requirements of [Patterson's] previous job, including lifting, pushing, and pulling and carrying, were unable to be maximized due to questionable full effort." Tr. 342. The evaluation noted Patterson's "inability to stand on a constant basis, requiring at least several breaks of 2 to 3 minutes in order to tolerate the standing and walking demands of her job." Id. It was felt unlikely Patterson would return to her previous job at an efficient capacity. Id.

By March 20, 2008, Patterson's range of motion in her right knee was 0 to 112 degrees. Tr. 313. Dr. Holmes noted "she had some inconsistencies in the [range of motion] test and was unable to demonstrate consistent work effort." Id. While Dr. Holmes did not believe Patterson would be able to return to her previous occupation, he thought she would be "fit for a sedentary-type job." Id.

On August 17, 2010, Dr. Holmes evaluated Patterson at the request of her attorney. Tr. 406. At this evaluation, Patterson "refused to bend [her knee] more than about 30 to 40 degrees" for Dr. Holmes, and complained of "strange hot and cold sensations in her leg." Id. However, Dr. Holmes did not find any neurovascular abnormalities to Patterson's gross sensory and motor testing. Id. Additionally, although Patterson stated her hip and foot were now involved with her knee problems, Dr. Holmes found he could rotate her ankle through full range of motion, and her hip mainly through full range of motion. Id. Dr. Holmes concluded that Patterson's primary issues were "psychologic or psychiatric." Id. He told Patterson that her fear of using her knee would prevent her from ever getting better and recommended continuing her psychiatric counseling. Id.

On May 12, 2008, Dr. William L. Lehman, Jr., of Carolina Orthopaedic Surgery Associates, PA, conducted an independent medical evaluation of Patterson based on a review of her relevant medical records as well as a personal examination. Tr. 321. After summarizing Patterson's past treatment, he noted her therapy had been discontinued and that she claimed "swelling after about an hour of standing, numbness sensation from the knee into the mid-calf anteriorly, as well as a chronic limp." Id. He further noted that "she could place her foot directly forward rather than externally rotated, but her

symptoms of pain remain[ed] quite prominent along with her limited motion." Id.  Dr. Lehman speculated as to the source of her pain, but admitted that "a portion of the pain pattern remains unexplained, and may result from some sympathetically mediated pain syndrome, though this remains an unconfirmed diagnosis." Tr. 344.  His examination found a combined impairment rating of 31% for Patterson's right lower extremity. Id.

Dr. Lehman saw Patterson again on September 11, 2008 for evaluation of her back pain. Tr. 339.  He recommended a lumbar spine MRI study. Id.  The MRI, done the same day, was normal. Id.  At a follow-up visit on September 23, 2008, Dr. Lehman advised Patterson to continue stretching exercises but suggested no other treatment. Tr. 335.

On November 30, 2009, Patterson went to her primary care physician, Rosanna Silva, D.O., complaining of back and right leg pain. Tr. 390.  She received a prescription of Ibuprofen 600 mg. Tr. 391.  Dr. Silva saw Patterson again on January 4, 2010, noting her right lower leg to be atrophied. Tr. 389.  Patterson was then using a cane. Id.  On April 6, 2010, Dr. Silva refilled a prescription for Meloxicam for Patterson's chronic right knee pain. Tr. 387.  Patterson returned on July 21, 2010, reporting muscle spasms in her leg, especially at night. Tr. 386.  Dr. Silva assessed that the spasms were related to hypokalemia and continued Patterson on potassium chloride. Id.  On February 3, 2011, Patterson returned to Dr. Silva, reporting left arm and shoulder pain. Tr. 450.  X-rays of Patterson's left shoulder were negative. Tr. 453.  Patterson went back to the clinic on May 4, 2011, stating she could not straighten her right leg and could not afford physical therapy. Tr. 504.  She refused orthopedic, podiatry, and physical therapy referrals, and Dr. Silva prescribed Mobic. Id.  Dr. Silva conducted a physical capacities evaluation for

Patterson on November 1, 2011. Tr. 522-25. Dr. Silva concluded Patterson's limitations would preclude all full time work. Tr. 525.

Patterson underwent a functional capacities evaluation at the Columbia Rehabilitation Clinic, Inc. on January 14, 2009. Tr. 480. The evaluation indicated Patterson "could meet the demands of limited sedentary work." Id. Physical therapist Tracy Hill noted that Patterson "put forth a consistent effort during the evaluation. Although the majority of her lifting tests were self limited by complaints of increased pain, it is unlikely she could function at a much higher level. . . . She does not tolerate occasional squatting, kneeling, or stairclimbing." Id.

Dr. William W. Stewart performed a vocational evaluation of Patterson on February 25, 2009. Tr. 491. Based on Patterson's subjective complaints of pain, he concluded Patterson could not perform any of her past work, was unable to do any other work existing in the national economy, and was unlikely to become able to work. Tr. 500-01.

Patterson had an initial assessment of her mental condition conducted at the Catawba Mental Health Center on January 5, 2010. Tr. 378. She visited this center four more times, including for a new initial assessment on April 20, 2011. Tr. 512. On her May 26, 2010 visit, Patterson's psychiatrist wrote a comment stating that she would very likely be "stuck" in her function until there was some resolution in her quest for compensation, as she was so heavily focused on that issue. Tr. 400.

**C. ALJ's Findings**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505.  The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520, 416.920.  Under this process, the ALJ must determine whether the claimant:  (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in 20 C.F.R. pt. 404, subpt. P, app. 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined by his Residual Functional Capacity (RFC)) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.  See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981).  The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

At the first and second steps of the sequential evaluation, the ALJ found that Patterson has not engaged in substantial gainful activity since May 11, 2007, and that Patterson suffers from the severe impairments of right leg pain, right knee pain status post ACL surgery, and right quadriceps atrophy.  Tr. 17.  At the third step, the ALJ determined that Patterson's impairments did not meet or equal the criteria of an impairment listed in the applicable regulations.  Tr. 19.  At the later steps, the ALJ found

that Patterson's impairments prevent her from performing any past relevant work but that she is capable of performing a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Tr. 19-24. The ALJ concluded that Patterson can perform jobs that exist in significant numbers in the national economy. Tr. 25.

At step three, the ALJ looked to Listing 1.02, "Major dysfunction of a joint(s) (due to any cause)." Specifically, the ALJ found as follows:

> Special consideration was given to Section 1.02 of the Listing of Impairments. The claimant's right lower extremity impairment has not resulted in gross anatomical deformity, chronic joint pain and stiffness with signs of limitation of motion or to her abnormal motion of one major peripheral weight-bearing joint, resulting in an inability to ambulate effectively, as required to meet Section 1.02A of the Listing of Impairments. The claimant does not meet or equal the cited section or any other section of the Listing of Impairments. These findings are consistent with the residual functional capacity described below.

Tr. 19.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). This court is not required to review the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by

substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id.

## III. DISCUSSION

In his R&R, the magistrate judge found that "the ALJ did not detail his rationale for why Plaintiff's impairments did not meet or medically equal Listing 1.02." R&R 8. Due to the ALJ's inadequate explanation of her conclusion at this step, the magistrate judge found it was "not possible for the Court to conduct a proper review of the record to determine if there was substantial evidence to support the unfavorable decision." Id. at 10. The R&R also gave weight to Patterson's assertion that the medical evidence revealed "she had contractures and . . . chronic joint pain and stiffness with signs of limitation of motion." Id. at 8. The R&R recommended the case be remanded "for a proper determination of whether Plaintiff has an impairment that meets or is medically equal in severity to Listing 1.02." Id. at 10.

The Commissioner objects to the R&R and contends that the ALJ erred in recommending the case be remanded. Specifically, the Commissioner argues that when the decision is read in its entirety, it is apparent that the ALJ sufficiently articulated the reasons why plaintiff did not meet Listing 1.02. ECF No. 32 at 3-4.

The magistrate judge determined that the Fourth Circuit's decision in Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986), mandates a finding that the ALJ erred in

the instant case by failing to detail her rationale for why Patterson's impairments did not meet or medically equal Listing 1.02. R&R 8. Patterson point to her visits with Dr. Holmes and Dr. Lehman, claiming their notes support evidence of chronic joint pain and stiffness with signs of limitation of motion. Id.

"[T]here is no hard and fast rule as to the degree of specificity required in an ALJ's findings." Willis ex. rel. J.C. v. Astrue, No. 11-cv-00071, 2012 WL 3240042, at *5 (W.D. Va. Aug. 7, 2012). While the evidence Patterson mentions could potentially support a finding that her impairments meet or medically equal Listing 1.02, this is not enough to deny the ALJ's non-disability finding. The ALJ's decision thoroughly discusses Patterson's medical history following her claim of disability on May 11, 2007. Tr. 19-24. The ALJ specifically focuses on Patteron's medical consultations and treatments for pain and limitation of motion, including her visits with Dr. Holmes and Dr. Lehman. Id.

The Fourth Circuit has held that it is not always necessary for the ALJ to present evidence under a particular step, as long as it is possible, from reading the ALJ's decision in its entirety, to determine whether there was substantial evidence to support the ALJ's conclusions. See McCarty v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (unpublished) (finding that "the ALJ need only review medical evidence once in his decision" and, therefore, the ALJ's thorough analysis of the medical evidence at step four was sufficient to determine whether claimant satisfied step three).[1]

[1] See also Kiernan v. Astrue, No. 12-cv-459, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) ("Where the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion in his Step 3 analysis."); Stevenson v. Astrue, No. 10-cv-01565, 2011 WL 4501914, at *4 (D.S.C. Sept. 28, 2011) (finding it was not reversible error where the ALJ sufficiently addressed

Unlike in Cook, here, the ALJ provided enough information regarding Patterson's medical history to determine whether there was substantial evidence to support her conclusion.  See Crockett v. Astrue, No. 10-cv-00064, 2011 WL 2148815, at *10 (W.D. Va. June 1, 2011); see also Willis ex. rel. J.C. v. Astrue, No. 11-cv-071, 2013 WL 373468, at *1 (W.D. Va. Jan. 19, 2013) ("[T]he ALJ's decision thoroughly evaluates the evidence concerning claimant's impairments, and it is clear from the substance of the ALJ's decision that the conclusion that the claimant's impairments do not meet, medically equal or functionally equal any listing is amply supported by substantial evidence.").  The ALJ's discussion of the evidence throughout her decision provides enough information to determine there was substantial evidence to support her conclusion.

Based on his finding that the ALJ committed reversible error at step three, the magistrate judge declined to address plaintiff's argument that the ALJ failed to conduct a proper RFC analysis.  The court remands to the magistrate judge for review in the first instance of the ALJ's RFC analysis and any additional arguments raised by plaintiff.

---

whether the claimant satisfied step three in his analysis of the evidence "in the latter portion of his decision"); Buchanan v. Astrue, No. 10-cv-167, 2011 WL 5439087, at *5 (E.D.N.C. Aug. 15, 2011) ("[A]n ALJ's step-three finding will be upheld, even where she fails to explicitly address why specific listings were not met, where she has discussed in detail the evidence presented and adequately explained her consideration thereof."); Jones v. Astrue, No. 07-cv-452, 2009 WL 455414, at *3 (E.D.N.C. Aug. 7, 2009) (finding that "it is not necessarily reversible error" where the ALJ does not include "his substantive discussion of the evidence" at steps two and three, but rather, at a later step); Schoofield v. Barnhart, 220 F. Supp. 2d 512, 522 (D. Md. 2002) (finding that remand is not necessary "where it is clear from the record which listing or listings in the [Listing of Impairments] were considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the Step Three analysis which allows this Court to readily determine whether there was substantial evidence to support the ALJ's Step Three conclusion").

## IV. CONCLUSION

For the reasons set forth above, the court **REMANDS** for further proceedings.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 15, 2013**
**Charleston, South Carolina**