**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

CHRISTINE PATTERSON,                    )
                                        )    No. 4:12-1021-DCN-TER
                Plaintiff,              )
                                        )
        vs.                             )
                                        )    **ORDER**
CAROLYN W. COLVIN, ACTING               )
COMMISSIONER OF SOCIAL SECURITY,        )
                                        )
                Defendant.              )
_____ )

This matter is before the court on the magistrate judge's Report and

Recommendation (R&R) that the court reverse the Commissioner of Social Security's

decision denying claimant Christine Patterson's application for disability insurance

benefits (DIB) and supplemental security income (SSI) and remand the case to the

Commissioner for further administrative action.  The Commissioner has filed objections

to the R&R.  For the reasons set forth below, the court remands to the magistrate judge

for further proceedings.

## I.  BACKGROUND

### A.  Procedural History

Patterson filed an application for DIB and SSI on March 24, 2010, alleging that

she became unable to work on May 11, 2007.  She requested a hearing before an

administrative law judge (ALJ) after the Social Security Administration denied her

application initially and on reconsideration.  A hearing was held on November 4, 2011,

and, in a decision issued on December 15, 2011, the ALJ determined that Patterson was

not disabled.  The ALJ's finding became the final decision of the Commissioner when the

1

Appeals Council denied further review on February 15, 2012.  Patterson filed this action

for judicial review on April 14, 2012.  On June 26, 2013, the magistrate judge issued an

R&R, recommending the Commissioner's decision be reversed and the case be remanded

to the Commissioner for further administrative action.  R&R 10-11.  The Commissioner

filed objections to the R&R on July 15, 2013.

### B.  Patterson's Medical History

Plaintiff Christine Patterson was born December 15, 1969.  Tr. 38.  She has past

relevant work experience as a cashier, inspector, mold operator, price marker, and sewing

machine operator.  Tr. 7-8.  Plaintiff alleges disability since May 11, 2007, after an

accident at work on April 7, 2007, wherein she injured her right leg.  R&R 2.

Following her injury, Patterson sought treatment at Moore Orthopaedic Clinic

from April 10, 2007 to March 20, 2008, for a total of approximately twelve visits.  Tr.

300-13.  Dr. Silas Wendell Holmes performed surgery on Patterson's ACL on May 11,

2007, and continued to monitor her progress following the surgery.  Tr. 302-13.

Patterson underwent a subsequent manipulation with lysis of adhesions on November 16,

2007.  Tr. 406.  Throughout her visits at the clinic, Patterson complained of pain and

trouble moving her knee.  Id.  On March 3, 2008, the clinic performed a functional

capacity evaluation and concluded that "the physical demand requirements of

[Patterson's] previous job, including lifting, pushing, and pulling and carrying, were

unable to be maximized due to questionable full effort."  Tr. 342.  The evaluation noted

Patterson's "inability to stand on a constant basis, requiring at least several breaks of 2 to

3 minutes in order to tolerate the standing and walking demands of her job."  Id.  It was

felt unlikely Patterson would return to her previous job at an efficient capacity.  Id.

2

By March 20, 2008, Patterson's range of motion in her right knee was 0 to 112 degrees.  Tr. 313.  Dr. Holmes noted "she had some inconsistencies in the [range of motion] test and was unable to demonstrate consistent work effort."  Id.  While Dr. Holmes did not believe Patterson would be able to return to her previous occupation, he thought she would be "fit for a sedentary-type job."  Id.

On August 17, 2010, Dr. Holmes evaluated Patterson at the request of her attorney.  Tr. 406.  At this evaluation, Patterson "refused to bend [her knee] more than about 30 to 40 degrees" for Dr. Holmes, and complained of "strange hot and cold sensations in her leg."  Id.  However, Dr. Holmes did not find any neurovascular abnormalities to Patterson's gross sensory and motor testing.  Id.  Additionally, although Patterson stated her hip and foot were now involved with her knee problems, Dr. Holmes found he could rotate her ankle through full range of motion, and her hip mainly through full range of motion.  Id.  Dr. Holmes concluded that Patterson's primary issues were "psychologic or psychiatric."  Id.  He told Patterson that her fear of using her knee would prevent her from ever getting better and recommended continuing her psychiatric counseling.  Id.

On May 12, 2008, Dr. William L. Lehman, Jr., of Carolina Orthopaedic Surgery Associates, PA, conducted an independent medical evaluation of Patterson based on a review of her relevant medical records as well as a personal examination.  Tr. 321.  After summarizing Patterson's past treatment, he noted her therapy had been discontinued and that she claimed "swelling after about an hour of standing, numbness sensation from the knee into the mid-calf anteriorly, as well as a chronic limp."  Id.  He further noted that "she could place her foot directly forward rather than externally rotated, but her

3

symptoms of pain remain[ed] quite prominent along with her limited motion." Id. Dr.

Lehman speculated as to the source of her pain, but admitted that "a portion of the pain

pattern remains unexplained, and may result from some sympathetically mediated pain

syndrome, though this remains an unconfirmed diagnosis." Tr. 344. His examination

found a combined impairment rating of 31% for Patterson's right lower extremity. Id.

Dr. Lehman saw Patterson again on September 11, 2008 for evaluation of her

back pain. Tr. 339. He recommended a lumbar spine MRI study. Id. The MRI, done

the same day, was normal. Id. At a follow-up visit on September 23, 2008, Dr. Lehman

advised Patterson to continue stretching exercises but suggested no other treatment. Tr.

335.

On November 30, 2009, Patterson went to her primary care physician, Rosanna

Silva, D.O., complaining of back and right leg pain. Tr. 390. She received a prescription

of Ibuprofen 600 mg. Tr. 391. Dr. Silva saw Patterson again on January 4, 2010, noting

her right lower leg to be atrophied. Tr. 389. Patterson was then using a cane. Id. On

April 6, 2010, Dr. Silva refilled a prescription for Meloxicam for Patterson's chronic

right knee pain. Tr. 387. Patterson returned on July 21, 2010, reporting muscle spasms

in her leg, especially at night. Tr. 386. Dr. Silva assessed that the spasms were related to

hypokalemia and continued Patterson on potassium chloride. Id. On February 3, 2011,

Patterson returned to Dr. Silva, reporting left arm and shoulder pain. Tr. 450. X-rays of

Patterson's left shoulder were negative. Tr. 453. Patterson went back to the clinic on

May 4, 2011, stating she could not straighten her right leg and could not afford physical

therapy. Tr. 504. She refused orthopedic, podiatry, and physical therapy referrals, and

Dr. Silva prescribed Mobic. Id. Dr. Silva conducted a physical capacities evaluation for

4

Patterson on November 1, 2011.  Tr. 522-25.  Dr. Silva concluded Patterson's limitations

would preclude all full time work.  Tr. 525.

Patterson underwent a functional capacities evaluation at the Columbia

Rehabilitation Clinic, Inc. on January 14, 2009.  Tr. 480.  The evaluation indicated

Patterson "could meet the demands of limited sedentary work."  Id.  Physical therapist

Tracy Hill noted that Patterson "put forth a consistent effort during the evaluation.

Although the majority of her lifting tests were self limited by complaints of increased

pain, it is unlikely she could function at a much higher level. . . . She does not tolerate

occasional squatting, kneeling, or stairclimbing."  Id.

Dr. William W. Stewart performed a vocational evaluation of Patterson on

February 25, 2009.  Tr. 491.  Based on Patterson's subjective complaints of pain, he

concluded Patterson could not perform any of her past work, was unable to do any other

work existing in the national economy, and was unlikely to become able to work.  Tr.

500-01.

Patterson had an initial assessment of her mental condition conducted at the

Catawba Mental Health Center on January 5, 2010.  Tr. 378.  She visited this center four

more times, including for a new initial assessment on April 20, 2011.  Tr. 512.  On her

May 26, 2010 visit, Patterson's psychiatrist wrote a comment stating that she would very

likely be "stuck" in her function until there was some resolution in her quest for

compensation, as she was so heavily focused on that issue.  Tr. 400.

### C.  ALJ's Findings

The Social Security Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12 months." 42 U.S.C.
§ 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-
step sequential evaluation process to determine whether a claimant is disabled. See 20
C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the
claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe
impairment; (3) has an impairment which equals an illness contained in 20 C.F.R. pt.
404, subpt. P, app. 1, which warrants a finding of disability without considering
vocational factors; (4) if not, whether the claimant has an impairment which prevents him
from performing past relevant work; and (5) if so, whether the claimant is able to perform
other work considering both his remaining physical and mental capacities (defined by his
Residual Functional Capacity (RFC)) and his vocational capabilities (age, education, and
past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris,
658 F.2d 260, 264-65 (4th Cir. 1981). The applicant bears the burden of proof during the
first four steps of the inquiry, while the burden shifts to the Commissioner for the final
step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993
F.2d 31, 35 (4th Cir. 1992)).

    At the first and second steps of the sequential evaluation, the ALJ found that
Patterson has not engaged in substantial gainful activity since May 11, 2007, and that
Patterson suffers from the severe impairments of right leg pain, right knee pain status
post ACL surgery, and right quadriceps atrophy. Tr. 17. At the third step, the ALJ
determined that Patterson's impairments did not meet or equal the criteria of an
impairment listed in the applicable regulations. Tr. 19. At the later steps, the ALJ found

that Patterson's impairments prevent her from performing any past relevant work but that

she is capable of performing a range of light work as defined in 20 C.F.R. §§ 404.1567(b)

and 416.967(b).  Tr. 19-24.  The ALJ concluded that Patterson can perform jobs that exist

in significant numbers in the national economy.  Tr. 25.

At step three, the ALJ looked to Listing 1.02, "Major dysfunction of a joint(s)

(due to any cause)."  Specifically, the ALJ found as follows:

> Special consideration was given to Section 1.02 of the
> Listing of Impairments. The claimant's right lower
> extremity impairment has not resulted in gross anatomical
> deformity, chronic joint pain and stiffness with signs of
> limitation of motion or to her abnormal motion of one
> major peripheral weight-bearing joint, resulting in an
> inability to ambulate effectively, as required to meet
> Section 1.02A of the Listing of Impairments. The claimant
> does not meet or equal the cited section or any other section
> of the Listing of Impairments. These findings are consistent
> with the residual functional capacity described below.

Tr. 19.

## II.  STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the

magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. §

636(b)(1).  This court is not required to review the factual findings and legal conclusions

of the magistrate judge to which the parties have not objected.  See id.  The

recommendation of the magistrate judge carries no presumptive weight, and the

responsibility to make a final determination remains with this court.  Mathews v. Weber,

423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits

"is limited to determining whether the findings of the [Commissioner] are supported by

substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907

F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of

evidence but may be somewhat less than a preponderance." Id. (internal citations

omitted).  "[I]t is not within the province of a reviewing court to determine the weight of

the evidence, nor is it the court's function to substitute its judgment for that of the

[Commissioner] if his decision is supported by substantial evidence." Id.

### III.   DISCUSSION

In his R&R, the magistrate judge found that "the ALJ did not detail his rationale

for why Plaintiff's impairments did not meet or medically equal Listing 1.02." R&R 8.

Due to the ALJ's inadequate explanation of her conclusion at this step, the magistrate

judge found it was "not possible for the Court to conduct a proper review of the record to

determine if there was substantial evidence to support the unfavorable decision." Id. at

10.  The R&R also gave weight to Patterson's assertion that the medical evidence

revealed "she had contractures and . . . chronic joint pain and stiffness with signs of

limitation of motion." Id. at 8.  The R&R recommended the case be remanded "for a

proper determination of whether Plaintiff has an impairment that meets or is medically

equal in severity to Listing 1.02." Id. at 10.

The Commissioner objects to the R&R and contends that the ALJ erred in

recommending the case be remanded.  Specifically, the Commissioner argues that when

the decision is read in its entirety, it is apparent that the ALJ sufficiently articulated the

reasons why plaintiff did not meet Listing 1.02.  ECF No. 32 at 3-4.

The magistrate judge determined that the Fourth Circuit's decision in Cook v.

Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986), mandates a finding that the ALJ erred in

8

the instant case by failing to detail her rationale for why Patterson's impairments did not

meet or medically equal Listing 1.02.  R&R 8.  Patterson point to her visits with Dr.

Holmes and Dr. Lehman, claiming their notes support evidence of chronic joint pain and

stiffness with signs of limitation of motion.  Id.

 "[T]here is no hard and fast rule as to the degree of specificity required in an

ALJ's findings."  Willis ex. rel. J.C. v. Astrue, No. 11-cv-00071, 2012 WL 3240042, at

*5 (W.D. Va. Aug. 7, 2012).  While the evidence Patterson mentions could potentially

support a finding that her impairments meet or medically equal Listing 1.02, this is not

enough to deny the ALJ's non-disability finding.  The ALJ's decision thoroughly

discusses Patterson's medical history following her claim of disability on May 11, 2007.

Tr. 19-24.  The ALJ specifically focuses on Patteron's medical consultations and

treatments for pain and limitation of motion, including her visits with Dr. Holmes and Dr.

Lehman.  Id.

The Fourth Circuit has held that it is not always necessary for the ALJ to present

evidence under a particular step, as long as it is possible, from reading the ALJ's decision

in its entirety, to determine whether there was substantial evidence to support the ALJ's

conclusions.  See McCarty v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002)

(unpublished) (finding that "the ALJ need only review medical evidence once in his

decision" and, therefore, the ALJ's thorough analysis of the medical evidence at step four

was sufficient to determine whether claimant satisfied step three).[1]

---

[1] See also Kiernan v. Astrue, No. 12-cv-459, 2013 WL 2323125, at *5 (E.D. Va.
May 28, 2013) ("Where the ALJ analyzes a claimant's medical evidence in one part of
his decision, there is no requirement that he rehash that discussion in his Step 3
analysis."); Stevenson v. Astrue, No. 10-cv-01565, 2011 WL 4501914, at *4 (D.S.C.
Sept. 28, 2011) (finding it was not reversible error where the ALJ sufficiently addressed

Unlike in <u>Cook</u>, here, the ALJ provided enough information regarding Patterson's

medical history to determine whether there was substantial evidence to support her

conclusion.  <u>See</u> <u>Crockett v. Astrue</u>, No. 10-cv-00064, 2011 WL 2148815, at *10 (W.D.

Va. June 1, 2011); <u>see also</u> <u>Willis ex. rel. J.C. v. Astrue</u>, No. 11-cv-071, 2013 WL

373468, at *1 (W.D. Va. Jan. 19, 2013) ("[T]he ALJ's decision thoroughly evaluates the

evidence concerning claimant's impairments, and it is clear from the substance of the

ALJ's decision that the conclusion that the claimant's impairments do not meet,

medically equal or functionally equal any listing is amply supported by substantial

evidence.").  The ALJ's discussion of the evidence throughout her decision provides

enough information to determine there was substantial evidence to support her

conclusion.

Based on his finding that the ALJ committed reversible error at step three, the

magistrate judge declined to address plaintiff's argument that the ALJ failed to conduct a

proper RFC analysis.  The court remands to the magistrate judge for review in the first

instance of the ALJ's RFC analysis and any additional arguments raised by plaintiff.

---

whether the claimant satisfied step three in his analysis of the evidence "in the latter
portion of his decision"); <u>Buchanan v. Astrue</u>, No. 10-cv-167, 2011 WL 5439087, at *5
(E.D.N.C. Aug. 15, 2011) ("[A]n ALJ's step-three finding will be upheld, even where she
fails to explicitly address why specific listings were not met, where she has discussed in
detail the evidence presented and adequately explained her consideration thereof.");
<u>Jones v. Astrue</u>, No. 07-cv-452, 2009 WL 455414, at *3 (E.D.N.C. Aug. 7, 2009)
(finding that "it is not necessarily reversible error" where the ALJ does not include "his
substantive discussion of the evidence" at steps two and three, but rather, at a later step);
<u>Schoofield v. Barnhart</u>, 220 F. Supp. 2d 512, 522 (D. Md. 2002) (finding that remand is
not necessary "where it is clear from the record which listing or listings in the [Listing of
Impairments] were considered, and there is elsewhere in the ALJ's opinion an equivalent
discussion of the medical evidence relevant to the Step Three analysis which allows this
Court to readily determine whether there was substantial evidence to support the ALJ's
Step Three conclusion").

## IV.   CONCLUSION

For the reasons set forth above, the court **REMANDS** for further proceedings.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 15, 2013**
**Charleston, South Carolina**

11