IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CHRISTINE PATTERSON, | ) Civil Action No. 4:12-1021-DCN-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN,[1] ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## JURISDICTION

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social

Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The only issues before the Court are whether the findings of fact are

supported by substantial evidence and whether proper legal standards have been applied.

## PROCEDURAL HISTORY

The Plaintiff, Christine Patterson, filed an application for DIB and SSI on March 24, 2010,

alleging a disability onset date of May 11, 2007. Plaintiff requested a hearing before an

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

administrative law judge (ALJ) after her claim was denied initially and on reconsideration. A hearing was held on November 4, 2011, at which Plaintiff appeared with counsel and testified along with a vocational expert (VE). The ALJ issued a decision on December 15, 2011, finding that Plaintiff was not disabled. After the Appeals Council denied Plaintiff's subsequent request for review of the ALJ's decision, the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. § 404.981. Plaintiff filed this action on April 14, 2012.

A Report and Recommendation was entered on June 26, 2013, recommending that the Commissioner's decision be reversed and the case be remanded to the Commissioner for further administrative action. On August 15, 2013, the Honorable David C. Norton, United States District Judge, entered an order remanding the case to the undersigned. In the Order, Judge Norton found that "[t]he ALJ's discussion of the evidence throughout her decision provides enough information to determine there was substantial evidence to support her conclusion" that Plaintiff did not meet or medical equal Listing 1.02. (Doc. # 37, p. 10). Therefore, Judge Norton remanded this case to the undersigned for review of the ALJ's RFC analysis and any additional arguments raised by the Plaintiff.

**FACTUAL BACKGROUND**

As set out in the previous Report and Recommendation, the Plaintiff was born December 15, 1969. Plaintiff completed the twelfth grade but received a certificate rather than a diploma. Plaintiff has past relevant work experience as a cashier, inspector, mold operator, price marker, and sewing machine operator. Plaintiff alleged disability since May 11, 2007, after an accident at work on April

2

7, 2007, wherein she injured her right leg.

## DISABILITY ANALYSIS

As discussed in the previous report and recommendation, in the decision of December 15, 2011, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act on December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since May 11, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: right leg pain, right knee pain status post anterior cruciate ligament surgery, and right quadriceps atrophy (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she can lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk for about two hours in a workday; and sit throughout the workday. She can occasionally stoop, balance, twist, crouch, kneel, crawl, and climb stairs or ramps, but never climb ladders, ropes, or scaffolds, she can never operate foot pedals or other controls with the right lower extremity. She must avoid moderate exposure to hazards such as unprotected heights and dangerous machinery.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 15, 1969 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563 and 416, 963).

8. The claimant completed the twelfth grade but did not receive a diploma. She

3

is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from May 11, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-26).

Under the Social Security Act (the Act), 42 U.S.C. § 405 (g), this court's scope of review of the Commissioner's final decision is limited to determining: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## ARGUMENT

This case was remanded by Judge Norton to the undersigned to address Plaintiff's argument that "[t]he ALJ erred in the determination of the claimant's residual functional capacity in finding that she was capable of performing light work activity." (Plaintiff's brief). Plaintiff asserts that the ALJ fails to include many significant portions of Dr. Lehman's opinions in the decision that support her alleged limitations. Plaintiff argues that at her visit with Dr. Lehman on September 11, 2008, Dr. Lehman opined that she should remain out of work. At the last visit with Dr. Lehman, Plaintiff asserts he indicated that she was unable to sit, stand or walk for any period of time and expressed his opinion that neither her limp nor her back pain were likely to improve. Additionally, Plaintiff argues the ALJ erred in discrediting the medical source statement of her treating physician, Dr. Silva, finding that the opinion was not supported by objective medical evidence and in discrediting the pain she asserted.

Defendant argues in response that the RFC assessment adopted by the ALJ is supported by substantial evidence. Defendant contends that the ALJ reasonably found that Plaintiff was capable of performing a limited range of work between the sedentary and light work levels based on the evidence in the case. Defendant asserts that the RFC finding was supported by the treatment records and opinion of Dr. Holmes, Plaintiff's orthopedic surgeon, and by the four separate medical record reviews conducted by state agency physicians. Defendant argues that the ALJ reasonably discounted the opinions of Dr. Lehman and Dr. Silva and Plaintiff's credibility regarding the extent of her pain and disabling limitations.

In a related argument to Plaintiff's contention that the ALJ erred in the assessment of her RFC, Plaintiff asserts that the ALJ erred in discounting the opinions of Dr. Lehman and Dr. Silva.

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. Id. § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." Id. § 404.1527(c). The Commissioner "[g]enerally ... give[s] more weight to opinions from ... treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 404.1527(c)(2). Further, the Commissioner "[g]enerally ... give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." Id. § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. Id. §§ 404.1527(e)(l)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96–2P, 61 Fed, Reg. 34490, 34492 (July 2, 1996).

6

In the decision, the ALJ discussed the medical records/opinions of both Dr. Lehman and Dr.

Silva. The ALJ found as follows:

> On May 12, 2008, William L. Lehman, Jr., M.D., an orthopedist, examined the claimant in an independent medical examination related to her worker's compensation claim. His examination found a limited range of motion of her right knee and some decreased sensation, but no weakness of the joint. His findings supported a diagnosis of arthrofibrosis with residual motion deficits. He stated a combined impairment rating of 31% for her right lower extremity.
>
> Dr. Lehman saw the claimant again on September 11, 2008. She then complained of back difficulties related to her abnormal gait. He suggested a lumbar spine MRI study. The MRI, done the same day, was normal. At a follow-up visit on September 23, 2008, Dr. Lehman advised the claimant to continue stretching exercises but suggested no other treatment.
>
> On November 30, 2009, the claimant went to her primary care physician (Rosanna Silva, D.O.), complaining of back and right leg pain. She received a prescription for Ibuprofen 600 mg. Dr. Silva saw the claimant again on January 4, 2010, noting her right lower leg to be atrophied. She was then using a cane. On April 6, 2010, Dr. Silva refilled a prescription for Meloxicam for the claimant's chronic right knee pain. The claimant returned on July 21, 2010, reporting muscle spasms in her leg, especially at night. Dr. Silva assessed that complaint was related to hypokalemi and continued the claimant on potassium chloride.
>
> . . .
>
> On February 3, 2011, the claimant reported to Dr. Silva left arm and shoulder pain. As noted above, x-rays of that shoulder were negative. She went back to the clinic on May 4, 2011, stating that she could not straighten her right leg and could not afford physical therapy. She refused orthopedic, podiatry, and physical therapy referrals, and Dr. Silva prescribed Mobic.

(Tr. 21-22).

> The ALJ went on to discuss other medical evidence of record and then concluded as follows:
>
> As for the opinion evidence, several sources in the record have suggested opinions concerning the claimant. I have noted above the impairment ratings suggested by Dr. Holmes and Dr. Lehman. Dr. Lehman also prepared a letter dated October 22, 2008, commenting that the claimant's work injury affected her back also. He found that she had reached maximum medical improvement for her back by that time, with an additional impairment rating of 7% of her back. Those impairment ratings do not

demonstrate disability as defined in the Social Security Act.

The claimant underwent a functional capacities evaluation on January 14, 2009. That report concluded that she could perform only a limited range of sedentary work. However, I note that the examiner stated that the lifting tests were self-limited by the claimant and the limitations in sitting, standing, and walking were self-reported by her. The clinical findings of Dr. Holmes and Dr. Lehman do not support the limitations suggested by the functional capacities evaluation.

. . .

Dr. Silva, the claimant's primary care physician, prepared a medical source statement on November 1, 2011, describing limitations in the claimant that would preclude all full-time work. A treating physician's medical opinion, on the issue of the nature and severity of an impairment, is entitled to special significance; and, when supported by objective medical evidence and consistent with other substantial evidence of record, entitled to controlling weight. Social Security Ruling 96-2p. In this case, the limitations suggested by Dr. Silva are not supported by clinical findings documented in her treatment notes or those of other physicians treating the claimant. I do not find the opinions of Dr. Silva, Dr. Stewart or the functional capacities evaluation to be supported by objective clinical findings or persuasive in evaluating the claimant's disability.

(Tr. 23-24).

In the instant case, the ALJ did not wholly reject the opinions of Drs. Lehman and Silva. Although Plaintiff complains that the ALJ reduced the medical notes of Dr. Lehman of two visits "down to 10 lines when the medical records of these two visits entailed over 6 full pages of dictated notes," (Plaintiff's brief, p. 20), the ALJ is not required to set out all of the medical notes in his decision. The ALJ reasonably discussed that Dr. Lehman found a limited range of motion of her right knee with some decreased sensation but no weakness of the joint and that his findings supported a diagnosis of arthofibrosis with residual motion deficits. Additionally, the ALJ noted that Dr. Lehman ordered an MRI of the back after she complained of back difficulties related to her abnormal gait which results were normal. It was noted that Dr. Lehman did not suggest any other treatment but only advised Plaintiff to continue stretching exercises. As to Dr. Silva, the ALJ noted

8

that she was the Plaintiff's primary care physician who prepared a medical source statement on November 1, 2011. However, the ALJ found that even though she was a treating physician, the limitations suggested by Dr. Silva were not supported by the clinical findings documented in her treatment notes or those of the other physicians treating the Plaintiff, including that of Dr. Holmes her orthopedic surgeon. (Tr. 24). The ALJ noted that Plaintiff's treating surgeon, Dr. Holmes, performed a reconstruction of her right ACL and a partial lateral meniscectomy on May 11, 2007. That post-operatively, Plaintiff had a slow course of recovery and Dr. Holmes performed a manipulation and lysis of adhesions in her right knee on November 16, 2007. Plaintiff was advised by Dr. Holmes to resume physical therapy for improvement in her range of motion and found she had reached maximum medical improvement by March 20, 2008. The ALJ also noted that Dr. Holmes saw Plaintiff on August 17, 2010, at the request of her attorney, and found she had significant quadriceps atrophy but x-rays he obtained showed no new abnormalities. Additionally, the ALJ noted Dr. Holmes' suggestion that Plaintiff's primary issues were psychological, as [t]here were no mechanical problems with her leg and no basis for further surgery. He emphasized to her that she needed to increase use of the limb to recover function. He advised her to pursue additional physical therapy and psychological counseling. (Tr. 22). The ALJ discussed the medical evidence of Dr. Lehman, albeit not as much as the Plaintiff would have liked, and the records of Dr. Silva. The ALJ discussed the contradictory medical evidence on which he relied and the reasons he discounted other medical evidence. The ALJ's assessment shows that he evaluated the opinions and treatment notes of the medical experts and the objective medical evidence from Drs. Lehman and Silva in conducting the RFC assessment. Thus, there is substantial evidence to support the ALJ's determination of Plaintiff's RFC and his discounting portions of the opinions of Dr. Lehman who

performed an independent medical evaluation in relation to her Worker's Compensation claim and saw Plaintiff on three visits and that of her treating physician, Dr. Silva, which opinion was contradicted by Dr. Holmes.

Also related to her RFC argument, Plaintiff's contends the ALJ erred in finding her complaints not entirely credible. Under <u>Craig v. Chater</u>, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the factfinder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. <u>See also</u> 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ found at <u>Craig</u>'s step one that Plaintiff had impairments capable of producing the symptoms that she alleged and, accordingly, proceeded to step two. The ALJ set out a summary of Plaintiff's medical records and testimony at the hearing and concluded that her allegations that she is unable to perform all work activity not credible. The ALJ found as follows:

> The claimant testified at the hearing that her impairments include right leg and knee pain and atrophy of the right leg. She has pain every day and all of the time and it is worse with rain, cold, weather, and changes in weather. When seated, she props that leg up on an ottoman. She uses a heating pad on the leg at night. She has lost a significant amount of weight since her injury in 2007. She described pain in her left shoulder down the arm into the wrist and hand due to overuse of one side of her body and constant pain in her lower back. She has numbness in her right leg, feet, toes, and left hand. It is constant in her left hand and intermittent in the other areas she identified. Walking for long periods with her cane makes her pain and numbness worse. Her pain is not the same all the time, with varying natures at different times. She described depression, for which she takes Prozac and Trazodone, with crying spells two to three times a week. She finds it hard to stay focused for long periods

of time. Her medications sometimes make her dizzy, with headaches. When that occurs, she lies down to relax.

With regard to regular activities, the claimant stated that resting improves her pain, but if she stands or walks for as little as fifteen to twenty minutes, the pain returns. She stated that she can only sit for about one hour at a time and then she often dozes off unless she gets up and moves around. She usually sits on a couch with several pillows behind her back and her feet on an ottoman. She uses a cane all the time when she goes out and holds onto furniture when walking around her home. She has a driver's license but never drives. She listens to the television more than watches it due to blurry vision from her diabetes. She also does not read as much as she used to for that reason. She has difficulty dressing, particularly in buttoning clothes and tying shoes, she has difficulty washing some areas of her body and uses a shower chair. She does not go to church and rarely goes out to visit anyone. She does not like to be in crowds. She sometimes goes grocery shopping with her sister, using an electric cart. Her sister picks up items and puts them in the cart for her. Her sisters and brother do most household chores for her. Pain disturbs her sleep frequently, and she feels tired all the time.

The witness testified that she visits the claimant every other day. If the claimant is having a good day, she will stay for about one hour. She takes her sister grocery shopping, talks to her to encourage her, and makes sure she is dressed appropriately. On days that they go shopping, her visits last three to four hours. Further, she testified that she does some light housework for the claimant, but stated that another sister and their brother do most heavy cleaning and housework for the claimant. She observes her sister using a cane every day. When asked to describe the claimant's depression, the witness stated that the claimant does not want to get out of bed and feels that everyone is after her to hurt her. She shuts herself off from other people and resisted seeking mental health treatment for some time after the witness encouraged her to do so. She feels that she is a burden on other people and is no longer able to take care of herself. She sees her sister having a very low energy level.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the statements of the claimant and the witness concerning the intensity, persistence and limiting effects of these symptoms are not substantiated by the total evidence of record and are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 20-21).

After discussing the medical evidence as cited under the opinion of the treating physician analysis above, the ALJ concluded that:

11

The clinical picture reflected in these treatment records shows quite limited objective findings to support the degree of disabling limitations alleged by the claimant. Although she has reported extensive and continuing pain since her two knee surgeries, diagnostic studies and the later findings of her treating orthopedist have shown no new conditions and no mechanical basis for the limitations she asserts. It is interesting that her psychiatrist has also commented on her excessive focus on her worker's compensation lawsuit and claim for disability as interfering with improvement in her function. The evidence of record shows significant periods when she was not treated for any other complaints, as well as terminations of her mental health treatment due to missed appointments. She recently declined several referrals to other specialists likely to improve her condition. The objective clinical findings from her treating and examining sources support the residual functional capacity described above.

In evaluating the claimant's credibility, I must again note the limited findings to support the degree of limitations she asserted. The clinical and diagnostic findings do not support the severity of her allegations. She testified that she completed high school in regular classes but did not receive a diploma because she lacked some course. She acknowledged that her pain medications relieve her pain while she is resting, though the pain may return when she moves around. She identified no side effects from her psychoactive medications. She and her sister both stated that those medications help her and that she is not receiving other forms of mental health therapy. She admitted that she can stand without her cane but must hold onto furniture if back pain starts. She stated that she has told her doctors about her left hand complaints, but the evidence of record does not confirm that she has done so. Although she stated that she could only sit for about one hour, she also stated that she sits all day in her chosen position, with getting up to eat or go to the bathroom. She alleged that she does few household chores, but she stated that she prepares meals cleans up the kitchen after she eats, and folds laundry. Her sister confirmed that the claimant prepares her own meals. As noted above, she goes grocery shopping with her sister. She has a driver's license, though she stated that she does not drive. Family members come to visit her, though she rarely goes out to visit them. She watches television and reads, suggesting a capacity for focus and concentration. The notes of her physicians do not show findings to support symptoms or limitations of the severity she alleged. After careful review of all the evidence, I find that the testimony of the claimant and her sister as to pain and other subjective symptoms is not credible to establish impairment of the disabling severity alleged.

(Tr. 23).

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently

supported by substantial evidence. <u>Hatcher v. Sec'y, Dep't of Health & Human Servs.</u>, 898 F.2d 21, 23 (4th Cir.1989) (<u>quoting</u> <u>Smith v. Schweiker</u>, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The ALJ conducted the proper credibility analysis under the Social Security Rules and cited substantial evidence to support his finding that Plaintiff's subjective complaints were not entirely credible. Substantial evidence supports the ALJ's determination that the Plaintiff's testimony was not fully credible. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. <u>Hays v. Sullivan</u>, 907 F.2d, 1453, 1456 (4th Cir.1990). It is not the responsibility of the Court to determine the weight of the evidence. <u>Id</u>.

As previously discussed, the ALJ found Plaintiff has the RFC to " to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she can lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk for about two hours in a workday; and sit throughout the workday. She can occasionally stoop, balance, twist, crouch, kneel, crawl, and climb stairs or ramps, but never climb ladders, ropes, or scaffolds, she can never operate foot pedals or other controls with the right lower extremity. She must avoid moderate exposure to hazards such as unprotected heights and dangerous machinery." (Tr. 19).

The Social Security Regulations define RFC as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional

13

capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). If the ALJ

finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner

to establish that the claimant could perform other work, considering the claimant's RFC, age,

education, and past work experience.

In finding Plaintiff's RFC, the ALJ found Plaintiff's testimony not credible. As discussed

above, there is substantial evidence to support the ALJ's decision in not finding Plaintiff completely

credible. The ALJ's finding regarding Plaintiff's RFC is consistent with 10 C.F.R. §§ 404.1567(b)

and 416.967(b). The decision reflects that the ALJ properly reviewed all of the evidence in

determining Plaintiff's RFC. Hays v. Sullivan, 907 F.2d 1453,1456 (4th Cir. 1990) (It is the

responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence); see also

Clarke v. Bowen, 843 F.2d 271, 272–273 (8th Cir.1988) ("The substantial evidence standard

presupposes . . . a zone of choice within which the decision makers can go either way without

interference by the Courts"). The ALJ's finding that Plaintiff could perform light work with

restrictions as noted is supported by substantial evidence in the case record. See English v. Shalala,

10 F.3d 1080, 1084 (4th Cir.1993) (finding that substantial evidence supported the ALJ's conclusion

that the claimant was physically capable of limited light work despite his multiple impairments; case

remanded on other grounds); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1993) (ALJ may properly

consider inconsistencies between a plaintiff's testimony and the other evidence of record in

evaluating the credibility of the plaintiff's subjective complaints). Therefore, this Court finds that

the ALJ's opinion sufficiently explained how she determined Plaintiff's RFC. See, e.g., Hines v.

Barnhart, 453 F.3d 559, 563 (4th Cir.2006) ("In light of SSR 96–8p, [the ALJ's] conclusion (that

Plaintiff could perform a range of sedentary work] implicitly contained a finding that Mr. Hines

physically is able to work an eight-hour day.) Therefore, the ALJ did not err in her assessment of Plaintiff's RFC and the decision should be affirmed.


## CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, it is RECOMMENDED that the Commissioner's decision be AFFIRMED.


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge


August 19, 2013
Florence, South Carolina