**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| CHRISTINE PATTERSON, ) | |
| ) | No. 4:12-cv-01021-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN,[1] *Acting* ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

    This matter is before the court on United States Magistrate Judge Thomas E. Rogers's August 19, 2013 report and recommendation ("the second R&R") that the court affirm Acting Commissioner of Social Security Carolyn Colvin's decision denying plaintiff Christine Patterson's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Patterson has filed objections. For the reasons set forth below, the court adopts the second R&R and affirms the Commissioner's decision.

## I.   BACKGROUND

### A.  Procedural History

    Patterson filed an application for DIB and SSI on March 24, 2010, alleging that she became unable to work on May 11, 2007. She requested a hearing before an administrative law judge ("ALJ") after the Social Security Administration denied her application initially and on reconsideration. A hearing was held on November 4, 2011, and, in a decision issued on December 15, 2011, the ALJ determined that Patterson was not disabled. The ALJ's finding became the final decision of the Commissioner when the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this lawsuit.

1

Appeals Council denied further review on February 15, 2012.  Patterson filed this action for judicial review on April 14, 2012.  On June 26, 2013, the magistrate judge issued a report and recommendation ("the first R&R"), recommending the Commissioner's decision be reversed and the case be remanded to the Commissioner for further administrative action.  First R&R 10-11.  In the first R&R, the magistrate judge found that the ALJ erred at step three of the sequential evaluation process by insufficiently explaining why Patterson's impairments did not meet or medically equal Listing 1.02.  Id. at 10.  Because the magistrate judge found that the ALJ erred at step three, he did not address the allegation that the ALJ also improperly calculated Patterson's residual functional capacity ("RFC") at step four.  The Commissioner filed objections to the R&R on July 15, 2013.

On August 15, 2013, the undersigned remanded the case to the magistrate judge for further review.  Specifically, the court found that the ALJ's decision at step three was supported by substantial evidence.  Order 9-20, August 15, 2013, ECF No. 37.  Because the court found that the ALJ did not err when she determined that Patterson's impairments did not meet or medically Listing 1.02, the court remanded to the magistrate judge so that he could consider whether the ALJ erred in calculating Patterson's RFC.

On August 19, 2013, the magistrate judge issued the second R&R, recommending that "the ALJ did not err in her assessment of Plaintiff's RFC and the [Commissioner's] decision should be affirmed."  Second R&R 15, Aug. 19, 2013, ECF No. 41.  Patterson filed objections to the second R&R on September 6, 2013, and the matter is ripe for the court's review.

### B. Patterson's Medical History

Patterson was born December 15, 1969 and turned forty-two years old on the date that the ALJ issued her decision in this case. Tr. 38. Patterson has a twelfth-grade education,[2] and past relevant work experience as a cashier, inspector, mold operator, price marker, and sewing machine operator. Tr. 7-8. Plaintiff alleges disability since May 11, 2007, after she injured her right knee in an accident at work on April 7, 2007. First R&R 2.

Following her injury, Patterson sought treatment at Moore Orthopaedics from April 10, 2007 to March 20, 2008, for a total of approximately twelve visits. Tr. 300-13. Orthopedist Silas Wendell Holmes, M.D., repaired Patterson's anterior cruciate ligament ("ACL") on May 11, 2007, and continued to monitor her progress following the surgery. Tr. 302-13. Patterson underwent a subsequent manipulation with lysis of adhesions on November 16, 2007. Tr. 406. Throughout her treatment at the Moore Orthopaedics, Patterson complained of pain and trouble moving her knee. Id.

By March 20, 2008, Patterson's range of motion in her right knee was 0 to 112 degrees. Tr. 313. Dr. Holmes noted "she had some inconsistencies in the [range of motion] test and was unable to demonstrate consistent work effort." Id. While Dr. Holmes did not believe Patterson would be able to return to her previous occupation, he thought she would be "fit for a sedentary-type job." Id.

On August 17, 2010, Dr. Holmes evaluated Patterson at the request of her attorney. Tr. 406. At this evaluation, Patterson "refused to bend [her knee] more than about 30 to 40 degrees" and complained of "strange hot and cold sensations in her leg."

---

[2] At the hearing before the ALJ, Patterson explained that she completed the twelfth grade but did not receive a high school diploma because she "did not have enough units to complete." Tr. 61. Patterson stated that she always took regular, rather than special education, classes. Id.

Id.  However, Dr. Holmes did not find any neurovascular abnormalities to Patterson's gross sensory and motor testing.  Id.  Although Patterson stated her hip and foot were now involved with her knee problems, Dr. Holmes found he could rotate her ankle and hip through full range of motion.  Id.  Dr. Holmes concluded that Patterson's primary issues were "psychologic or psychiatric."  Id.  He told Patterson that her fear of using her leg would prevent her from ever getting better and recommended continuing her psychiatric counseling.  Id.

On May 12, 2008, orthopedist William L. Lehman, Jr., M.D., of Carolina Orthopaedic Surgery Associates, PA, conducted an independent medical evaluation of Patterson based on a review of her relevant medical records as well as a personal examination.  Tr. 321.  After summarizing Patterson's past treatment, he noted her therapy had been discontinued and that she claimed "swelling after about an hour of standing, numbness sensation from the knee into the mid-calf anteriorly, as well as a chronic limp."  Id.  He further noted that "she could place her foot directly forward rather than externally rotated, but her symptoms of pain remain[ed] quite prominent along with her limited motion."  Id.  Dr. Lehman concluded that "the physical demand requirements of [Patterson's] previous job, including lifting, pushing, and pulling and carrying, were unable to be maximized due to questionable full effort."  Tr. 342.  Dr. Lehman speculated as to the source of her pain, but admitted that "a portion of the pain pattern remains unexplained, and may result from some sympathetically mediated pain syndrome, though this remains an unconfirmed diagnosis."  Tr. 344.  His examination found a combined impairment rating of 31% for Patterson's right lower extremity.  Id.

Dr. Lehman saw Patterson again on September 11, 2008 for evaluation of her back pain. Tr. 339. He recommended a lumbar spine MRI study. Id. The MRI, done the same day, was normal. Id. At a follow-up visit on September 23, 2008, Dr. Lehman advised Patterson to continue stretching exercises but suggested no other treatment. Tr. 335.

On November 30, 2009, Patterson went to her primary care physician, Rosanna Silva, D.O., complaining of back and right leg pain. Tr. 390. She received a prescription of Ibuprofen 600 mg. Tr. 391. Dr. Silva saw Patterson again on January 4, 2010, noting that the muscles in her right lower leg had atrophied. Tr. 389. On April 6, 2010, Dr. Silva refilled a prescription for Meloxicam for Patterson's chronic right knee pain. Tr. 387. Patterson returned on July 21, 2010, reporting muscle spasms in her leg, especially at night. Tr. 386. Dr. Silva assessed that the spasms were related to hypokalemia and continued Patterson on potassium chloride. Id. On February 3, 2011, Patterson returned to Dr. Silva, reporting left arm and shoulder pain. Tr. 450. X-rays of Patterson's left shoulder were negative. Tr. 453. Patterson went back to the clinic on May 4, 2011, stating she could not straighten her right leg and could not afford physical therapy. Tr. 504. She refused orthopedic, podiatry, and physical therapy referrals, and Dr. Silva prescribed Mobic. Id. Dr. Silva conducted a physical capacities evaluation for Patterson on November 1, 2011. Tr. 522-25. Dr. Silva concluded Patterson's limitations would preclude all full-time work. Tr. 525.

Patterson underwent a functional capacities evaluation at the Columbia Rehabilitation Clinic, Inc. on January 14, 2009. Tr. 480. The evaluation indicated Patterson "could meet the demands of limited sedentary work." Id. Physical therapist

Tracy Hill noted that Patterson "put forth a consistent effort during the evaluation. Although the majority of her lifting tests were self limited by complaints of increased pain, it is unlikely she could function at a much higher level. . . . She does not tolerate occasional squatting, kneeling, or stairclimbing." Id.

Dr. William W. Stewart performed a vocational evaluation of Patterson on February 25, 2009. Tr. 491. Based on Patterson's subjective complaints of pain, he concluded Patterson could not perform any of her past work, was unable to do any other work existing in the national economy, and was unlikely to become able to work. Tr. 500-01.

Patterson had an initial assessment of her mental condition conducted at the Catawba Mental Health Center on January 5, 2010. Tr. 378. She visited this center four more times, including for a new initial assessment on April 20, 2011. Tr. 512. On her May 26, 2010 visit, Patterson's psychiatrist wrote a comment stating that she would very likely be "stuck" in her function until there was some resolution in her quest for compensation, as she was so heavily focused on that issue. Tr. 400.

### C. ALJ's Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the

6

claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in 20 C.F.R. pt. 404, subpt. P, app. 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined by his RFC) and his vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

At the first and second steps of the sequential evaluation, the ALJ found that Patterson has not engaged in substantial gainful activity since May 11, 2007, and that Patterson suffers from the severe impairments of right leg pain, right knee pain status post ACL surgery, and right quadriceps atrophy. Tr. 17. At the third step, the ALJ determined that Patterson's impairments did not meet or equal the criteria of an impairment listed in the applicable regulations. Tr. 19. Specifically, the ALJ found as follows:

> Special consideration was given to Section 1.02 of the Listing of Impairments. The claimant's right lower extremity impairment has not resulted in gross anatomical deformity, chronic joint pain and stiffness with signs of limitation of motion or to her abnormal motion of one major peripheral weight-bearing joint, resulting in an inability to ambulate effectively, as required to meet Section 1.02A of the Listing of Impairments. The claimant does not meet or equal the cited section or any other section of the Listing of Impairments. These findings are consistent with the residual functional capacity described below.

Tr. 19. The ALJ next determined that Patterson has the RFC

> [T]o perform a range of light work . . . in that she can lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk for about two hours in a workday; and sit throughout the workday. She can occasionally stoop, balance, twist, crouch, kneel, crawl, and climb stairs or ramps, but never climb ladders, ropes or scaffolds. She can never operate foot pedals or other controls with the right lower extremity. She must avoid moderate exposure to hazards such as unprotected heights and dangerous machinery.

Tr. 19. After determining Patterson's RFC, the ALJ found at step four that Patterson is unable to perform any past relevant work. Tr. 24. At step five, the ALJ concluded that Patterson could perform jobs that exist in significant numbers in the national economy, and was, therefore, not disabled. Tr. 25-26.

## II.   STANDARD OF REVIEW

The court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). The court is not required to review the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with the court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of

the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id.

### III.   DISCUSSION

Patterson makes two objections to the second R&R.  First, she contends that the ALJ erred at step three by finding that Patterson's combination of impairments do not meet or medically equal Listing 1.02.  Second, she argues that the ALJ erred by finding that Patterson retained the residual functional capacity to do light work.

### A.  Patterson Maintains that the ALJ Erred at Step Three.

Though the court has already ruled that the ALJ did not err at step three, Patterson persists in arguing that the ALJ's analysis was lacking.  Pl.'s Objections to Second R&R 7-8 ("Judge Norton's Order . . . contains several positions to which I would like to respond.").

Patterson's persistence is in vain.  The court did not remand this case to the magistrate judge for further consideration of the sufficiency of the ALJ's step three analysis.  Nor did the court remand to allow Patterson to "respond" to the court's "positions."  The court is not a party in this case and has not made arguments that require a response from Patterson.   Rather, the court found, in its August 15, 2013 order, that the ALJ's step three analysis was sufficient and that substantial evidence supported the ALJ's decision that Patterson's impairments did not meet or medically equal Listing 1.02.  That matter is not up for further debate.

Patterson's current objection is not the appropriate way to challenge the court's ruling that the ALJ's step three finding was supported by substantial evidence.  Her first objection is overruled.

### B. Patterson Argues that the ALJ Erred at Step Four.

Patterson's remaining objection is that the court improperly determined her RFC by failing to support her determination with substantial evidence.

A claimant's "residual functional capacity is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.2545 (Aug. 24, 2012). In her decision, the ALJ found that Patterson retained the ability to do light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(B) in that:

> [S]he can lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk for about two hours in a workday; and sit throughout the workday. She can occasionally stoop, balance, twist, crouch, kneel, crawl, and climb stairs or ramps, but never climb ladders, ropes, or scaffolds. She can never operate foot pedals or other controls with the right lower extremity. She must avoid moderate exposure to hazards such as unprotected heights and dangerous machinery.

Tr. 19. As noted above, the ALJ's decision must be supported by substantial evidence. Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays, 907 F.2d at 1456.

As the magistrate judge correctly found, the ALJ's decision in this case was supported by substantial evidence. She discussed at length the medical evidence that supported her RFC assessment, including treating orthopedist Dr. Holmes's opinion that

> [Patterson's] primary issues are psychologic or psychiatric. She is so fearful about using the limb that she has adopted these strange postures, making her believe that her leg is too short and I tried to emphasize this to her, that until she becomes less fearful using the limb that she will never get any better. From a mechanica [sic] standpoint, I do not think there are any problems.

Tr. 406. The ALJ also relied on the results of diagnostic studies and the opinions of a variety of consulting state agency physicians. She examined the medical evidence and opinions that would have supported a more restrictive RFC and explained her reasons for

providing less weight to those opinions and that evidence. Additionally, she amply explained her two-step determination that Patterson's subjective complaints were not credible.

The second R&R spells out why the ALJ's RFC determination was supported by substantial evidence. The magistrate judge's finding is sound and will not be disturbed. Patterson's second objection is overruled.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 17, 2013**
**Charleston, South Carolina**

11